JiROBERT M. MURPHY, Judge Pro Tem.
Allstate Insurance Company, defendant herein, appeals a judgment of the district court in favor of plaintiffs/appellees Harry and Faye Aucoin. Appellees have answered the appeal. For the reasons to follow, we affirm.
Appellees filed suit in the Twenty-Ninth Judicial District Court for damages sustained in an accident which occurred on F ebruary 25, 1995. It was alleged in the petition that John Doerner, the tortfeasor, drove his vehicle into the rear end of the Aucoin car, and that Aucoin sustained injuries as a result. Mrs. Aucoin, who was not involved in the accident, prayed for damages for loss of consortium.
Doerner and his insurer, Progressive Insurance Company, settled with the plaintiff for the policy limits of $25,000.00 and were subsequently dismissed from the proceed *1240 ings. Also impleaded as a defendant was Allstate, the plaintiffs uriinsured/underin-sured motorist carrier. Prior to Rtrial, Au-coin received medical payments from Allstate in the amount of $5,000.00.
Liability was not an issue at trial, which proceeded solely against Allstate for damages under the UM policy. Following trial on the merits, the district court granted judgment in favor of Mr. Aueoin and against Allstate for damages in the amount of $20,-000.00; and in favor of Mrs. Aueoin for $5,000.00 on her claim of loss of consortium. Allstate has appealed the judgment, alleging that the court awarded excessive damages to both plaintiffs. Plaintiffs/appellees answered the appeal, averring that the court erred in failing to award Mr. Aueoin the full amount of his lost wages; in failing to award adequate damages; and in failing to assess two limits for bodily injury against appellants.
Stipulations were made at trial that the applicable limits of the uninsured motorist coverage was $25,000.00 per person and $50,-000.00 per accident; defendant also stipulated to the authenticity of plaintiffs statement of lost earnings from his employer in the amount of $9,083.87.
ANALYSIS

Applicable Limits For Loss Of Consortium Claim

The Supreme Court, in Ferrell v. Fireman’s Fund Ins. Co., 96-3028, (La.7/1/97), 696 So.2d 569 held that as a matter of law, loss of consortium claims are derivative of the primary victim’s injuries. In construing a policy with limitations similar to the one before us, the Court stated:
... [the insurer] is legally responsible for the damages resulting from loss of consortium pursuant to C.C. art. |32315 ... Coverage for loss of consortium exists solely under the per person bodily injury limits of the policy because loss of consortium is derivative of the primary victims injuries and not a separate bodily injury.
The uninsured/underinsured portion of the Allstate policy in question contains the following pertinent clause:
LIMITS OF LIABILITY
1. The coverage limit shown on the declarations page for a) “each person” is the maximum that we will pay for damages arising out of bodily injury to one person in .any one motor vehicle accident, including damages sustained by anyone else as a result of that bodily injury.
[[Image here]]
2. These limits are the maximum Allstate will pay for any one motor vehicle accident regardless of the number of:
a) claims made
b) vehicles or persons shown on the declarations page; or
c) vehicles involved in the accident.
We find that the insurance contract at issue clearly limits recovery to the maximum of $25,000.00 for all claims of all persons made due to the injury of one person. The present matter is distinguishable from Crabtree v. State Farm, 632 So.2d 736 (La.1994), cited as authority by plaintiffs. Crabtree involved a Lejeune[1] claim for mental anguish which the trial court found constituted separate “bodily injury” under the terms of the ^particular policy involved in that case. Considering the language of the Allstate policy, and applying the reasoning of Ferrell, supra we have determined that the trial court was correct in finding that Mrs. Au-coin’s loss of consortium claim must be derived from those maximum limits for the injury to Mr. Aueoin.

Lost Wages Claim

At trial plaintiff testified that he missed six weeks of work due to the accident. He stated that if he is sick for a couple of days, he receives sick pay; after seven days of work missed, he goes on short-term disability as a result of a policy for which he pays a premium. Documents were submitted from Occidental Chemical Corporation, *1241 plaintiff’s employer, which showed that Mr. Aueoin was out of work from March 31 through May 21,1995, due to his back injury. One of the letters from Occidental had attached a copy of the breakdown of plaintiffs “actual earnings (sick pay) vs earnings he would have received if he had actively worked.” The breakdown showed a differential of $858.56, which Occidental found to have resulted as follows: “During his absence [plaintiff] did not receive shift pay and the April 30, 1995 general increase. This resulted in a total of $859.00 in lost wages.” In its reasons for judgment, the trial court found that plaintiffs lost earnings from the accident were $859.00.
Appellees correctly assert that the collateral source rule applies to wages in that a tortfeasor is not entitled to credit for payments made as sick leave benefits. The collateral source rule holds that a tortfeasor is not entitled to a credit for payments made to a plaintiff through collateral |5sources independent of the wrongdoer’s procuration or contribution. Dumas v. Harry, 94-19 (La. App. 5 Cir. 5/11/94), 638 So.2d 283. This court held in Dumas that the collateral source rule applies with regard to disability and health insurance payments paid for by the (non party) employer. In Surgi v. Otis Elevator Co. 541 So.2d 297,(La.App. 5 Cir. 1989), we found that the collateral source rule also applies to wages, in that a tortfea-sor is not entitled to credit for payments made as sick leave benefits. See also Turner v. Smith, 556 So.2d 983, (La.App. 3 Cir.1990):
It is well established that sick leave and vacation time is subject to the collateral source rule. Plaintiff is clearly entitled to recover the lost wages attributable to such lost time even though he was compensated.

Turner, supra, citation omitted.

Under the above jurisprudence, we find that the trial judge erroneously failed to apply the collateral source rule under the circumstances of this particular ease. The documents submitted by plaintiff at trial show that the actual wages which he would have earned during the time of his absence totaled $8,225.31[2], and that is the amount which the trial court should have awarded for lost wages.

Mr. Aueoin’s Damages

Following the accident, Mr. Aueoin was treated by his general practitioner, Dr. Richard Haydel, for about ten months, during which time plaintiff suffered from intense headaches and severe back pain. Medication, | ¡¡physical therapy, and cervical and pelvic traction helped the headaches, which disappeared after six weeks. However, the back pain persisted, and Dr. Haydel suggested that he take off work for six weeks. An MRI was ordered, which revealed degenerative changes in the lumbar spine. Dr. Hay-del referred plaintiff to Dr. Michael Carey, a neurosurgeon, for evaluation.
Dr. Carey felt that plaintiff had a sacroiliac joint dysfunction, which might warrant a steroid injection or some nonsteriodal anti-inflammatory medication. He did not think that plaintiffs complaints were the result of any pre-existing arthritic changes, and opined that the automobile accident caused his chronic long-term back pain. Plaintiff needed no further treatment from a neurological standpoint. Mr. Aueoin continued treatment with Dr. Haydel, who gave him cortisone injections and anti-inflammatory medication. In November he was given an epidural steroid injection. Dr. Haydel discharged him in December, 1995.
Because of the continuation of his symptoms, plaintiff saw Dr. John Logan, an orthopedic surgeon, in March of 1996. Dr. Logan felt that there was degenerative lumbar disc disease at three levels, and recommended stabilization of his lumbar spine, supervised physical therapy, continuation of his nonster-iodal anti-inflammatory medications, and placement in a lumbar corset. Dr. Logan recommended that plaintiff lose weight and exercise, which plaintiff did. The physician did not recommend surgery unless plaintiff began to suffer severe pain which would keep *1242 him from working. Dr. Logan felt plaintiffs symptoms could stay the same, or could |7improve, or his condition could degenerate. He would probably need to follow up with a doctor once every three to six months, for the foreseeable future, and will remain on medication for the rest of his life. He may need more physical therapy. Dr. Logan felt that the accident caused plaintiffs problems.
Mr. Aucoin testified that he suffers pain every day. He cannot go to ball games with his wife or help out with housework as he did formerly. He cuts his grass as a form of exercise, after which he has increased pain. His is a close family, but he does not spend as much time hunting and fishing with his (grown) children, and this makes him feel bad. Some days after work, which requires climbing and stooping, he has very severe pain. However, he continues to work in pain because he fears his employer will replace him. He has difficulty sleeping due to back pain and often must sleep on the floor with his legs elevated.
Mrs. Aucoin did not testify, but it was stipulated that if called, she would corroborate her husband’s complaints of pain. Ward Aucoin, plaintiffs son, testified that he and his father always did a lot of things together but that since the accident, plaintiff does not want to hunt or fish, and is never in a good mood anymore. Mr. Aucoin has changed a lot and is miserable, and he stays home a lot more.
The trial court found that plaintiffs past medical expenses totaled $11, 195.43, an amount established by medical records admitted at the trial. The trial exhibits further indicate an additional $2,798.00 for future epidural procedures.
IsThe standard for the reviewing court to follow to determine whether an award of damages is inadequate was stated by the Louisiana Supreme Court in Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993):
... “[i]t is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient,” Reck v. Stevens, 373 So.2d 498, 501 (La. 1979) ... In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate. See Reck v. Stevens, supra; Cariere v. State Farm Insurance Co., 467 So.2d 867 (La.App.2d Cir.1985).
The discretion vested in the trier of fact is great. Thus, an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). In Youn, the court stated: “[Rjeasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.” Youn v. Maritime Overseas Corp., 623 So.2d at 1261; Tartar v. Hymes, 656 So.2d at 756, 760-61.
Walker v. McCartney, 96-706 (La.App. 5 Cir.1997), 700 So.2d 898.
Considering the effects of the particular injury on the particular plaintiff under the circumstances of this particular case, we find no abuse of discretion in either the determination by the trial court that plaintiffs damages exceeded the amount of his earlier settlement, or in the award of $20,000 to Mr. Aucoin. Plaintiff has had, and will continue to have chronic 19pain relieved only intermittently by medication and will require medication and possibly therapy for the foreseeable future. He is obliged to work in pain, and misses many cherished activities and times with his family. Consequently, we affirm the judgment of the trial court on the damages awarded to Mr. Aucoin.
Similarly, Mrs. Aucoin is entitled to an award of damages for loss of consortium, and the record supports the conclusion by the trial court that $5,000.00 will reasonably compensate her for such loss. She has lost not only the former companionship of her husband, but also her helpmate; there is no indication of record that the situation will improve in the foreseeable future. We *1243 therefore also affirm the award of the trial court in this portion of the judgment.
For the foregoing reasons, the judgment of the trial court is affirmed. Defendant is assessed all costs of this appeal.
AFFIRMED.
DALEY, J., dissents with reasons.

. Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), in which case the Supreme Court recognized a plaintiffs right to recover damages for severe mental pain and anguish caused by witnessing serious injury to a close relation. The Louisiana Legislature subsequently codified Le-jeune in La. Civ.Code art. 2315.6.

. Although the parties stipulated as to the authenticity of the document, defendant did not stipulate as to the amount of lost wages shown on the exhibit. Our figures, taken from the exhibit, indicate the actual lost wages. The amount of $9,083.87 referred to by plaintiff erroneously includes $859.00 which Occidental determined was the difference between Aucoin’s earnings and his sick pay.